STEWART, J.
|) Plaintiff Jeanna Phillips appeals from a judgment dismissing her action against defendants Vanguard Resources, Inc. (“Vanguard”) and Kenneth Gray on summary judgment. We affirm.
FACTS
Jeanna Phillips was employed at the Physician and Surgery Center of St. Francis Medical Center in Morehouse Parish. On November 9, 1999, Ms. Phillips was passing through an adjoining pair of large metal doors that divide an operating room from the pre-op area when the doors closed on her hand, injuring her. Her hand was in between the doors when the doors closed, not in the hinge area. Ms. Phillips made a workers’ compensation claim against St. Francis; she also filed a tort action against the maintenance contractor, Vanguard, and the Vanguard employee in charge of maintaining the facili *300 ty, Gray.[1] In her petition, Phillips alleged that:
The exterior rubber lining of the twin metal doors had been allowed to completely erode causing the full weight of the twin doors to crush upon the fingers and hand of the plaintiff, without cushion or padding, causing her injury.
Phillips alleged that the erosion of the rubber lining was due to the negligence of Vanguard and Gray. As noted, the trial court released Vanguard and Gray on summary judgment. Whether the doors were unsafe due to inadequate maintenance is the primary concern in this lawsuit.
These doors were manually operated, not automatic, and one of the doors had a metal astragal (a vertical molding) to block light and sound from passing through the gap between the doors when they were closed. |j>When the doors closed, the metal astragal struck the wood on the other door face and made a noise that annoyed some of the hospital employees. To eliminate this noise, Gray obtained some quarter-inch thick foam weatherstripping and installed it on the back of the astragal. Gray said that this modification of the doors eliminated the noise altogether and that it was done solely for that purpose, not to make the doors safer. Gray sought and obtained authority from Vanguard to perform the modification.
Over time and due to the use of the doors, this piece of weatherstripping apparently became worn, although the degree of wear is not clear from the record. Gray received no complaints of noise, so he did not replace the weatherstripping at any point prior to the accident. Neither Gray nor another hospital employee, Eddie Rhymes, were aware of any other injuries caused by the doors, and Ms. Phillips was likewise unaware of any injuries caused by the doors prior to or after her accident. Gray replaced the weatherstripping after the accident, but he said that “it wasn’t really worn much. I mean, it still cushioned the door. There was no noise when the door shut, so I had no need to replace it.”
The details of the accident itself are not apparent from the record.
The defendants’ motion for summary judgment states in part:
Specifically, plaintiff alleges that, seconds after she manually opened one of the “double doors” separating an operating room from a waiting area, her attention was diverted when someone called her name, at which time she turned around and inadvertently placed her hand on the opposite door. Thereafter, the door she had opened closed on her hand, causing her injury.
This description of the accident is little supported by the appellate record. Neither of the plaintiffs’ petitions alleges that the accident happened this |sway. Attached to the defendants’ motion for summary judgment were five black-and-white photos of the doors,[2] the deposition of Kenneth Gray, the deposition of Eddie Rhymes, and a two-page excerpt from Ms. Phillips’ deposition. In his deposition, Rhymes said that he saw Ms. Phillips immediately after the accident and that she “claimed an injury resulting from one of the doors having closed on her hand.” The excerpt from Ms. Phillips’ deposition did not describe the accident. Also attached to the motion for summary judgment was a statement of undisputed facts *301 from the defendants which provided, in part:
3. Plaintiff was injured on November 9, 1999, when, by her own admission, she inadvertently placed her hand in the path of a door which had been opened by her seconds before and which was in the process of shutting.
In opposition to summary judgment; Phillips offered an affidavit from Linda Holyfield, CEO of P & S Surgical, who stated that she had been employed at the hospital since 1999 and was familiar with the doors. Holyfield said that Vanguard, and its employee Gray, were responsible for the upkeep and maintenance of the doors, and had they noticed that the “cushion and / or gasket” had become worn, it was their duty to maintain it. Holyfield did not say that the weatherstripping had become worn. Plaintiff also' included the entirety of the deposition of Kenneth Gray, who did not see the accident occur.
The trial court held a hearing and heard argument on the motion for summary judgment on April 6, 2006. The court concluded that there | ¿remained no genuine issues of material fact and that the plaintiff had no evidence that the door was unreasonably dangerous, so the court granted summary judgment. Plaintiff now appeals.
DISCUSSION
Appellate courts review summary judgments de novo, using the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Goins v. Wal-Mart Stores, Inc., 01-1136 (La.11/28/01), 800 So.2d 783; DeBrun v. Tumbleweeds Gymnastics, Inc., 39,499 (La.App.2d Cir.04/06/05), 900 So.2d 253. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). The procedure is favored under Louisiana law and shall be construed to accomplish these ends. Id. Summary judgmént shall be rendered “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
The burden of proof on a motion for summary judgment remains with the mov-ant. La. C.C.P. art. 966(C)(2). However, when the movant will not bear the burden of proof at trial on the matter before the court on the summary judgment motion, the burden does not require the movant to negate all essential elements of the adverse party’s claim, but rather to point out that there is an absence of factual support for one or more elements essential to that claim. La. C.C.P. art. 966(C)(2). If the adverse party then|sfails to produce factual support sufficient, to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact. Id.
As provided in La. C.C.P. art. 967(B), the adverse party may not rest on the mere allegations or denials of his pleading in response to a properly made and supported motion for summary judgment; rather, his response, by affidavits or otherwise, must set forth specific facts showing a genuine issue for trial. Otherwise, summary judgment shall be rendered against him, if appropriate. La. C.C.P. art. 967(B).
Phillips argues that she had no need to show that the doors were unreasonably dangerous; instead, she argues that Vanguard and Gray negligently failed to maintain the “cushion” on the doors and that this was the cause of her injury. Assuming arguendo that a pure negligence *302 standard applies (the analyses are now very similar, see Pamplin v. Bossier Parish Community College, 38,533 (La.App.2d Cir.7/14/04), 878 So.2d 889, writ denied, 04-2310 (La.1/14/05), 889 So.2d 266), a duty-risk analysis is conducted. Under the duty-risk analysis, a plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and, the risk of harm was within the scope of the protection afforded by the duty breached. Smith v. AAA Travel Agency, 37,278 (La.App.2d Cir.10/29/03), 859 So.2d 286, writs denied, 03-3248, 03-3329 (La.02/06/04), 865 So.2d 731, 735.
|fiIn this case, the plaintiff presented no evidence that the weatherstripping — even if newly installed and without flaw — would have prevented her injuries when the door shut on her hand. The record contains little to no evidence about how this accident actually happened, and in particular there is no evidence about the position of the plaintiffs hand in relation to the doors when they closed. There is likewise essentially no evidence to show whether the gap between the doors was sufficient to fit the plaintiffs hand even when the doors closed such that the weatherstripping would have been the only point of contact between the doors and the plaintiffs hand. There is no evidence to show what part of which door hit the plaintiffs hand and whether the weatherstripping was at the point of contact. The photos in the record show that the weatherstripping was applied only to the astragal; the edges of the doors themselves were unprotected and remained as they had come from the manufacturer.
Likewise, we reject the plaintiffs argument that there is a material question of fact about the defendants’ exercise of reasonable care. According to Gray, the weatherstripping was designed to prevent the doors from making noise; Gray did not intend or design the small piece of foam to be a “cushion” to protect the hands of those passing through the doors. As pointed out by the defendants, it would have been possible to make the doors safer by various means, but in the absence of any evidence that the doors presented a hazard merely by closing normally, the defendants had no duty to take additional steps to prevent injury to persons using the doors. .
^CONCLUSION
Accordingly, we affirm the judgment of the district court at plaintiffs cost.
AFFIRMED.

. She later added the Louisiana Insurance Guaranty Association ("LIGA”) as a defendant; Vanguard's insurer, Phico Insurance Company, was declared insolvent in 2001.

. Color photos are attached to the appellee's brief, but attachments to briefs are not part of the record and may not be considered by this court.